Affirmed and Memorandum Opinion filed December 29, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00033-CR

___________________

 

Casper Lee Moore, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 411th Judicial District Court

Polk County, Texas



Trial Court Cause No. 19,509

 



 

 

MEMORANDUM OPINION

            Appellant Casper Lee Moore challenges his conviction
on two counts of aggravated sexual assault of a child.  After finding appellant
guilty on both counts, the jury assessed punishment as confinement for 70
years.  Appellant contends that the trial court erred in admitting the
testimony of a sexual assault nurse examiner regarding statements made by the
victim.  We affirm.  

Background

            Appellant began sexually assaulting his daughter,
Jane Doe,[1]
when she was seven years old by inserting his fingers and penis into her
vagina.  He continued to sexually assault Jane until she and her mother left
appellant’s home in December 2006.

            Jane met with Shawna Farrar, a Child Protective
Services forensic interviewer, on January 3, 2007, to discuss appellant’s
actions.  Jane then went to Woodland Heights Medical Center on January 5, 2007,
to be examined by a sexual assault nurse examiner. The sexual assault nurse
examiner interviewed Jane regarding Jane’s history of sexual abuse and
conducted a physical examination.               

Appellant
was subsequently indicted on two counts of aggravated sexual assault of a
child.  Count one alleged appellant “cause[d] the penetration of the female
sexual organ [of] Jane Doe (pseudonym), a child younger than 14 years of age
who was not the spouse of said defendant by placing his male sexual organ into
the female sexual organ of Jane Doe (pseudonym).”  Count two alleged appellant
“cause[d] the penetration of the female sexual organ of Jane Doe (pseudonym), a
child younger than 14 years of age who was not the spouse of said defendant by
placing defendant[’]s fingers into the female sexual organ of Jane Doe
(pseudonym).” 

 A
jury trial was held on November 20, 2008.  The jury found appellant guilty on
both counts and assessed punishment as confinement for 70 years.      

Analysis

Appellant
argues that the trial court erred in admitting the testimony of Stacey Hamilton,
a sexual assault nurse examiner at Woodland Heights Medical Center, regarding Jane’s
oral description of her sexual abuse.  At trial, Hamilton testified that she
interviewed Jane before performing a physical sexual assault examination of
her.  During the interview, Jane stated as follows:

They brought me
here to tell you what happened with my dad and to have an exam to tell if I am
telling the truth.  My mom would be gone shopping or somewhere and I would be
on my knees on the floor playing with the dogs or cats and he would push me
down on the floor or if I was in my bedroom or their bedroom he would push me
down on the bed and he would take my pants off.  He would take his pants off
then he would put his dick inside of me and his fingers inside of me.  He
wouldn’t say anything.  I would tell him to stop and leave me alone.  I would
try to get out from under him but I couldn’t because he was so much bigger. 
When he was on top of me he would move back and forth.  This started when I was
about 7 years old.  He made me promise not to tell my mom but I did tell her. 
She took him into the bedroom and talked and she told me he said that he
wouldn’t do it again.  About 2 weeks later when my mom was gone somewhere he
came up and said [“]I want to do what I did again, but the last time you told
your mom and, you know what, if you tell her again I will hurt you” and he
started doing it again.  He pulled my pants down as usual and his down and he
put me on the bed and did it again.  

He had whipped
me plenty of times, and one time when we were moving out of our trailer — we
had a kids room because my mom babysits all the time — and it was a mess and I
said I wouldn’t clean it and he pushed me down hard on the ground and hurt my
back and I have had back problems ever since then.  I was scared of him.  

I was about 12
when we had to move out of our trailer into a camper trailer.  He had been
putting his fingers and dick in me about 5 times a week, whenever my mom was in
the shower or gone.  After we moved into the camper trailer it happened less,
probably because it was so small a place to live and we were all right together
in a small space, but it still happened about twice a week.  I finally told my
mom around June or July last year, but she said it wasn’t true, that she talked
to him and he said it wasn’t true.  He hasn’t put his dick inside of me since
then but he still puts his fingers inside of me.  Now he sneaks up when I’m
sleeping and puts his fingers in me and I act like I’m asleep and turn to get
away from him.  In the camper we have 2 couches that fold out to a bed and my
mom sleeps against one wall, my dad in the middle, and me against the other
wall so he does that almost every night.  The last time he did this was about 3
weeks ago.  My mom was in the shower.  I asked him to brush the knots out of my
hair and he said to sit on his lap so he could do it and he put his hand in my
pants.  I elbowed him and told him to leave me alone but he held me down
anyway.  I didn’t tell my mom again because I didn’t think she’d believe me.

I told my cousin
Natalie.  I think I told her when I was 7 and I would tell about every day
after it happened.  She told me to tell my mom and that’s when I told my mom
the first time.  Then she talked me into telling her the 2nd time and I told
her that my mom didn’t believe me.  She kept trying to get me to stay at her
house as much as I could.  She is one of my best friends.  

I told my old
boyfriend Joshua Martwick all about it.  He was mad and I thought he was going
to cry.  He told me to keep coming to my friend Kimberly’s house and try to
stay there as much as I could.

I told Kimberly
Carter, my best friend, about it.  She told me to call CPS.  She said if I
didn’t then she was going to.  I think I told her about it a couple of weeks
after her birthday in July.  She lives in Big Thickett and goes to Hardin
School.

I also told my
boyfriend [(Dustin)] and my cousin Nicky.  I told them not too long ago.  They
told me to call the cops or CPS or run away to get away from him.  I didn’t
know how to call CPS and I was so scared they would send me off to a foster
home where I didn’t know anybody.  I just thought that I was just going to have
to hold on til I was 17 so I could get out.  My brother left when he was 17 to
get away.    

 

Hamilton transcribed this statement as part of her forensic
report.  Hamilton’s report also included general information about Jane,
diagrams, and the results of Hamilton’s physical examination.  The State
offered Hamilton’s full report for admission as State’s Exhibit 3. Appellant
objected to the admission of Hamilton’s report, arguing that it was hearsay.  The
trial court overruled appellant’s objection and Hamilton read the above
statement to the jury.

We
review a trial court’s decision to admit or exclude evidence for abuse of
discretion.  Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App.
2002).  We will not reverse a trial court’s ruling unless that ruling falls
outside the zone of reasonable disagreement.  Id.  

To
preserve error regarding admission of evidence at trial, a party must make a
timely and specific objection and obtain a ruling.  Tex. R. App. P. 33.1(a).  This
requirement (1) ensures that the trial court will have an opportunity to
prevent or correct errors, thereby eliminating the need for a costly and
time-consuming retrial; (2) guarantees that opposing counsel will have a fair
opportunity to respond to complaints; and (3) promotes the orderly and
effective presentation of the case to the factfinder.  Gillenwaters v. State,
205 S.W.3d 534, 537 (Tex. Crim. App. 2006).  The grounds and the substance of what
is being objected to must be apparent.  See Hernandez v. State, 599
S.W.2d 614, 617 (Tex. Crim. App. 1980) (en banc) (op. on reh’g).

When
an exhibit contains both admissible and inadmissible evidence, the objection
must specifically identify which portions are inadmissible to apprise the trial
court of the exact objection.  See Sonnier v. State, 913 S.W.2d
511, 518 (Tex. Crim. App. 1995) (en banc) (objection to entire video recording
without specific reference to challenged material was insufficient and did not
preserve error for appeal).  Here, appellant did not make a specific objection
so as to inform the trial court of the specific objectionable material in Hamilton’s
report; rather, appellant made a general hearsay objection.  Therefore, appellant
failed to preserve error for appeal.  Id.; see also Riley v. State,
988 S.W.2d 895, 898 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (objection
to entire audio portion of videotape was not specific and did not preserve
error for appeal because it failed to indicate any specific objectionable part
of audio portion); Johnson v. State, 747 S.W.2d 451, 453 (Tex. App.—Houston
[14th Dist.] 1988, pet. ref’d) (objection to admission of tape-recording on
ground that it contained numerous statements about extraneous offenses did not
preserve error for appeal because no specific reference was made to portions of
recording containing statements about extraneous offenses).

Even
if error had been preserved, appellant has failed to demonstrate that he was
harmed by admission of the complained-of statements.  See Tex. R. App.
P. 44.2.  There are two types of error under Rule 44.2: (1) constitutional; and
(2) non-constitutional.  Id.  Appellant does not argue that the trial
court’s alleged error was constitutional.  Further, the Court of Criminal
Appeals has analyzed violations of evidentiary rules resulting in erroneous
admission of evidence as non-constitutional error.  See Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (applying rule 44.2(b) harm analysis
to the erroneous admission of hearsay evidence); King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (same).  Accordingly, we will analyze
any error as non-constitutional error under Texas Rule of Appellate Procedure
44.2(b).  

Under
Rule 44.2(b), we disregard non-constitutional error unless it affected the
defendant’s substantial rights.  Tex. R. App. P. 44.2.  A defendant’s
substantial rights are affected by the erroneous admission of evidence if the
error influenced the factfinder’s decision, and the influence was more than
“slight.”  See Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002);
Johnson, 967 S.W.2d at 417.  If there was no
influence or only a slight effect on the factfinder, reversal is not required. 
See Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (en banc).

Assuming
without deciding that the trial court erred in admitting Hamilton’s testimony
regarding these statements, we conclude that appellant has failed to establish
that the alleged error affected his substantial rights.  See Tex. R.
App. P. 44.2; Motilla, 78 S.W.3d at 355; Johnson, 967 S.W.2d at
417.  An error in the admission of evidence is harmless if substantially the
same evidence is received without objection.  Valle v. State, 109 S.W.3d
500, 509 (Tex. Crim. App. 2003); Ethington v. State, 819 S.W.2d 854, 858
(Tex. Crim. App. 1991) (en banc).  Jane testified at trial without objection as
follows:

·       
appellant began touching her vagina when she was seven;

·       
when her mother was gone, appellant would push her down, remove
her clothes and his pants, and put his fingers and penis inside her vagina;

·       
she would fight appellant to try to get away but she could not;

·       
appellant threatened to hurt her if she told anyone;

·       
appellant had hit her in the past;

·       
she was scared of appellant;

·       
she told her mother appellant was sexually abusing her when she
was eight and her mother talked with appellant, after which appellant put only
his fingers inside of her vagina, not his penis;

·       
her family moved into a camper trailer in which the whole family
slept on two couches that pulled into one bed with appellant sleeping in
between her and her mother;

·       
after moving into the camper trailer, appellant would put his
hand down her pants and try to put his fingers in her vagina at night;

·       
appellant touched her less frequently after the family moved into
the camper trailer;

·       
she told her cousins Natalie and Nicky what appellant was doing
to her;

·       
she told her friends Kimberly, Josh, and Dustin what appellant
was doing to her;

·       
her friends told her to tell her mother what appellant was doing,
to come stay with them, or to run away;

·       
she told her mother appellant was still sexually assaulting her
when she was 12, but her mother did not believe her; and

·       
the last time appellant touched her was in November 2006 when her
mother was in the shower and she asked appellant to brush the knots out of her
hair, at which time appellant told her to sit on his lap and he stuck his hand
down her pants. 

Jane’s
mother also testified at trial without objection that (1) when Jane was seven,
Jane asked her if it was okay to break promises, after she said yes, Jane told
her appellant was sexually assaulting her; (2) she confronted appellant in
their bedroom and appellant said he would not do it again; and (3) when Jane
was 12, Jane told her appellant was still sexually assaulting her.

            Because appellant did not object to the admission
of this testimony, and this testimony is substantially the same as the
testimony appellant complains of on appeal, any error regarding Hamilton’s
testimony on these issues was harmless.  See Valle, 109 S.W.3d at
509; Ethington, 819 S.W.2d at 858.

Conclusion

We
affirm the trial court’s judgment.           

 

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

Panel consists of Justices
Frost, Boyce, and Sullivan.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] To protect the child
victim’s identity, she is referred to as “Jane Doe.”